Weygandt, C. J.
Under favor of Sections 3 and 7 of Article XVIII of the Constitution of Ohio, the city of Cincinnati has adopted “a charter for its government.”
In this charter it is provided that the councilmen of the municipality shall be elected under a method of voting known as proportional representation.
The relator contends that voting machines are mechanically unsuited for use in elections held under that system and that it is impossible to use them therefor. Hence, he insists that their use for any election in that county would be illegal.
The respondents concede that the machines are mechanically not usable in elections for councilmen under the proportional representation system and that such use would not be attempted if the machines are purchased. However, the respondents insist that these facts in no way militate against the use of the machines in other elections.
The relator relies on the provisions of Section 3507.05, Revised Code, which read in part as follows:
“No voting machine shall be approved by the board of voting machine examiners or the Secretary of State, or be purchased, rented, or otherwise acquired, or used, unless it fulfills the following requirements:
í Í * * *
“(B) It shall permit each elector to vote at any election for all persons and offices for whom and for which he is lawfully entitled to vote, whether or not the name of any such person appears on a ballot label as a candidate; to vote for as many persons, for an office as he is entitled to vote for; and to vote for or against any question upon which he is entitled to vote.
*191 “ (G) It shall be capable of adjustment by election officers so as to permit each elector, at a primary election, to vote only for the candidates of the party with which he has declared his affiliation and shall preclude him from voting for any candidate seeking nomination by any other political party; and to vote for the candidates for nonpartisan nomination or election; # *
“(M) It shall be so constructed that a voter may readily learn the method of operating it, may expeditiously cast his vote for all candidates of his choice, and when operated properly shall register and record correctly and accurately every vote cast.”
However, the respondents rely on the following provisions of amended Section 3507.11, Revised Code:
“If a board of elections deems it impracticable to use voting machines for all or any part of an election in any precinct in which voting machines have been provided, it shall arrange to have the voting in such precinct conducted by paper ballots or voting machines, or both. ’ ’
In placing reliance on the above-quoted provisions of Section 3507.05, Revised Code, the relator insists that the language “it shall permit each elector to vote at any election” means that the voting machines must be usable at all elections, and that, since they coneededly can not be used for voting under the proportional representation system, they can not be used for voting at any election under any system. It, of course, is true that the word “any” may be employed to indicate “all” or “every.” Likewise, it is used in the sense of “some” or “one.” It.is simply a derivative of the word “one” or the weakened adjective form “a” or “an.” But how has the General Assembly used it here? Any doubt as to this is removed by the above-quoted provisions of amended Section 3507.11, Revised Code, in which it is said in simple unambiguous terms that in its discretion a board of elections may conduct an election “by paper ballots .or voting machines, or both.” The relator attempts to limit the effect of this provision by reason of the tense of the verb “have been provided” in the clause “in which voting machines have been provided.” (Italics supplied.) He contends that this statute is applicable only in in *192 stances where voting machines already have been provided. One difficulty with this view is that it disregards the fact that the statute is merely permissive and is not intended as a limitation on the time when voting machines may be provided or for what elections they may be used.
Another aspect of the relator’s contention is that by its choice of the proportional representation system of voting for which voting machines are not usable the city of Cincinnati would be able to prevent the use of voting machines in all other elections, including county and state elections under the general laws of the state. Under the present law the county and the state can not interfere with the city of Cincinnati in its choice of the proportional representation system of voting for which voting machines are not usable, and it would be anomalous if the city of Cincinnati merely by its local charter provisions could interfere with the county or state-wide elections conducted under state law.
This court is unanimously of the view that the conceded fact that voting machines are not usable under the proportional representation system employed by the city of Cincinnati does not preclude the use of such machines in other elections under state law.
Hence, it is not unlawful for the Board of Elections of Hamilton County to submit to the electors of that county the question whether bonds shall be issued for the purchase of voting machines for use in elections other than those held by the city of Cincinnati under the proportional representation system of voting.
The relator’s petition does not contain facts which show a cause of action, and the demurrers of the respondents must be sustained on that ground. The requested writ of mandamus is denied.

Writ denied.

Matthias, Hart, Zimmerman, Stewart, Bell and Taft, JJ., concur.